**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA         :

      v.                                    :         Case No. 05-387

ALFREDO MEDINA                   :

    Defendant                       :

<u>**SENTENCING MEMORANDUM**</u>

The Defendant respectfully submits this memorandum in aid of sentencing and Counsel for

Defendant apologizes for the late filing of this Memorandum.  This Memorandum is filed late due

to a clerical error within his office.

I.    <u>Alfredo Medina: His Life in Summary</u>

Alfredo Medina is self employed and works as a carpet installer.  Prior to his arrest he

worked between 70 to 80 hours per week and earned, on an average, between $5,000 to $6,000

per month.  There was little time for anything but work and the support of his family.  Alfredo

attends St. Michael's Catholic Church and also attended an Episcopal Church in Silver Spring.

He worshiped every two weeks at one or the other church.

Alfredo regularly sent money to Peru.  He would organize Christmas parties for the poor

villages there and would send clothes and gifts for the village Christmas party.  Alfredo drove a

1999 Ford Expedition.  He bought it used and financed the purchase with a $13,000 loan.  He

also drove a used 1999 Dodge Truck which he purchased for $5,000.

Nancy Trejo, his wife, describes Alfredo as a good man, a good father, and a good son.

She recounts that Alfredo always took care of his children and his parents.  He enabled his parents

to come from Mexico and has been their primary support in the United States.  His father is

disabled.  He has suffered three strokes, is wheelchair bound and is required to inject insulin daily for his diabetes.  In addition to caring, both financially and emotionally for his parents, he takes care of his siblings and occassionally sends money for their support.

He has seven children and he has faithfully paid child support and provided emotional support and guidance.  Alfredo has a three year old daughter Elizabeth.  He is deeply attached to her and was always the one to feed her, care for her, take her out and spend time with her.  Elizabeth is very attached to Alfredo and she has been profoundly effected by his arrest and absence.  She presently is seeing an psychologist.

According to his wife Nancy, Alfredo has been a model husband.  He has always tried to support her.  He paid for English classes for her to enable her to obtain a job.  Alfredo wants and has wanted Nancy to amount to something in life.  He also has sent money to Nancy's family in Peru when they were ill and needed essential medicine and critical surgery.

Alfredo has led a Spartan life dedicated to the service of others.  There is no evidence that he lived a lavish or a generous life style.  What is clear is that Alfredo has worked himself to the bone to support his wife, parents, children and other needy individuals.  In this very important regard he is quite different from someone convicted of the crime for which he stands ready to be sentenced.

II.    Acceptance of Responsibility & Cooperation

Alfredo has no prior juvenile adjudications or adult criminal convictions.  He has not impeded or obstructed justice.  What Alfredo respectfully asks this Honorable Court to consider is that he has always, through counsel, communicated his willingness to assist the Government in every way possible within the bounds of his knowledge.  Steven Jacobs, Esquire, of this office,

2

spoke with Asst. United States Attorney Wasserman on at least two occasions, over the telephone, regarding a debriefing session for Mr. Medina.  Sometime after Mr. Medina's plea hearing on January 23, 2006, Mr. Jacobs spoke to Mr. Medina about the value of a debriefing with the police as a means of lowering his time of incarceration.  Mr. Medina felt that he could provide information regarding "Gummi" the man who provided the cocaine recovered at the time of Mr. Medina's arrest.  He had his phone number in the phone listings saved on his cell phone and he knew where Gummi lived, though could not recall the address.  In addition, he had a picture of a man from Arizona who supplied Gummi.  Mr. Medina had met this man on one previous occasion at Gummi's home or office.  Mr. Jacobs discussed this with Mr. Wasserman who indicated that he wanted to talk to his officers about this information.  After some passage of time, Mr. Jacobs called Mr. Wasserman back to check on the debriefing.  Eventually, Mr. Wasserman told Mr. Jacobs that his officers felt that there was not sufficient interest to proceed with the debriefing.

At some point in mid to later February, 2006, during a telephone conversation that Mr. Jacobs initiated, Mr. Wasserman inquired whether Mr. Medina would testify against Mr. Flores whose trial was scheduled for March 6, 2006.  This had never been previously discussed and Mr. Jacobs and he had not raised this with Mr. Medina.  Because the trial date was soon, Mr. Jacobs made a special trip to DC Jail to discuss this with Mr. Medina and made it clear that he had to decide that day.  Mr. Medina agreed to testify against Mr. Flores and on the way back to the office Mr. Jacobs called Mr. Wasserman with that information.  Mr. Medina did not testify because the Flores matter was disposed of by a plea.

Counsel respectfully refers this Honorable Court to the Affidavit of Stephen I Jacobs

which is attached hereto and made a part hereof.

III.    Mr. Medina was a Minor Participant

It has already been pointed out that Mr. Medina has no prior juvenile or criminal record or record of any bad acts that would tend to indicate that he has a history of career criminal activity that would warrant an inference that he was something more than a minor participant in this activity. Mr. Medina's participation in this criminal activity was incidental and he does not possess the kind of information that the United States would be interested in obtaining for use in other investigations and prosecutions. Simply put he has furnished or has offered to furnish to the United States everything he knows about this activity. He can not furnish what he does not know and was not in a position to know. The history of this case and the pre sentence investigation tend to collaborate this assertion and conclusion.

IV.    The Relationship of Mr. Medina to the Semi-Automatic Pistol

Alfredo Medina was unaware of the existence of the pistol in the vehicle in which he was a passenger. In the course of discovery, Asst. United State's Attorney Wasserman, by letter dated November 8, 2005 furnished counsel with potential Brady information which states as follows: "On September 27, 2005, during a post-arrest interview with police, co-defendant Michael Luna stated that while he was riding with defendant Alfredo Medina, a/k/a Jose Soto, in Medina's Ford Expedition, Medina became nervous after he noticed a gun was on the floorboard of the driver's side of the truck while he was driving to the location of the narcotics transaction"

Clearly, Mr. Medina was unaware that the gun was in the vehicle and became upset when he realized it was present. Mr. Medina states that the gun (Glock .357) recovered in his Expedition was not his weapon. He did not know whose gun it is. He told the detective that he

4

found the gun while cleaning out the car after lending it to someone for several weeks.  He told

the police that he saw the gun for the first time at the Burger King.  He admitted to picking up the

gun, hence his fingerprints on it, when he showed it to Luna, just prior to the sale of the cocaine.

Also the police report makes it clear that Mr. Medina informed the police about the gun in

the car when arrested and even pointed it out a second time when the police could not find it. Mr.

Medina states that he found the weapon in the Ford Expedition while cleaning the car after getting

the car back from another friend to whom he loaned it.  Mr. was in the process of buying the Ford

Expedition from "Tony" who lives in Maryland.

V.    Alfredo Medina is an Undocumented Alien

The pre-sentence investigation confirms that Mr. Medina is an undocumented alien in the

United States.  Counsel asks the court to exercise any discretion, it may have, under United States

v. Smith 27 F.3d 649 (DC Cir., 1994) to reduce Mr. Medina's sentence by six months.

Respectfully submitted,

AUERBACH & SIMMONS

_____/S/_____
Luiz R. S. Simmons
8613 Cedar Street
Silver Spring, Maryland  20910
(301) 589-8844
(301) 589-7343 Fax
luizlaw@aol.com
Counsel for the Defendant